ORIGINAL



1  ANDREW WEISSMANN
   Chief, Fraud Section
2  Criminal Division, U.S. Department of Justice
   NIALL M. O'DONNELL (D.C. Bar No. 991519)
3  DAVID A. BYBEE (Ky. Bar No. 9962)
   Trial Attorneys, Fraud Section
4  Criminal Division, U.S. Department of Justice
         1400 New York Ave NW, 8th Floor
5        Washington, DC 20005
         Telephone: (202) 616-0483
6        Facsimile: (202) 616-1660
         E-mail: niall.odonnell@usdoj.gov
7
   Attorneys for Plaintiff
8  UNITED STATES OF AMERICA

9                    UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11 UNITED STATES OF AMERICA,        No. CR 16-538-RGK

12          Plaintiff,
                                    PLEA AGREEMENT FOR DEFENDANT
13              v.                  JANE MATSUBA-GARCIA

14 JANE MATSUBA-GARCIA,
        aka "Jane Garcia,"
15      aka "Jane Park,"
        aka "Lucy Vanalden,"
16      aka "Gabby Charis,"

17          Defendant.

18

19      1.    This constitutes the plea agreement between JANE MATSUBA-

20 GARCIA, also known as ("aka") Jane Garcia, aka Jane Park, aka Lucy

21 Vanalden, aka Gabby Charis (hereinafter "defendant") and the Fraud

22 Section of the Criminal Division of the U.S. Department of Justice

23 and the United States Attorney's Office for the Central District of

24 California (together, "the government") in the above-captioned case.

25 This agreement is limited to the government, as defined to include

26 only the above two components, and does not bind any other federal,

27 state, local, or foreign prosecuting, enforcement, administrative,

28 or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    At the earliest opportunity requested by the government and provided by the Court, appear and plead guilty to Counts One and Nine of the indictment in *United States v. Dorothy Matsuba, et al.*, Case No. CR 16-538-RGK (the "Indictment"), which charge defendant with three different offenses, namely, conspiracy to commit wire fraud, false statements relating to loan applications, and identity theft, in violation of 18 U.S.C. § 371 (Count One) and false statements relating to loan applications in violation of 18 U.S.C. §§ 1014 and 2 (Count Nine).

b.    Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the government and provided by the Court, appear and plead guilty to a one-count Information in the form attached to this agreement as Exhibit A or a substantially similar form (the "Information"), charging defendant with subscribing to a false tax return, in violation of 26 U.S.C. § 7206(1).

c.    Not contest facts agreed to in this agreement.

d.    Abide by all agreements regarding sentencing contained in this agreement.

e.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

f.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

2

g.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

h.   Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the government.

i.   Make restitution as specified in this plea agreement and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

3.   Defendant admits that defendant received unreported income for 2010 and 2011. Defendant agrees that:

a.   Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service ("IRS") to examine and make adjustments to defendant's returns.

b.   Defendant will not file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

c.   Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for 2010 and 2011.

4.   Defendant also  agrees to cooperate fully with the government, the Federal Bureau of Investigation, the IRS, the Federal Housing Finance Agency Office of Inspector General, the Los Angeles County Sheriff's Department, and, as directed by the government, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority. This cooperation requires defendant to:

a. Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b. Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the government or compelled by subpoena or court order.

c. Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the government, or its designee, inquires.

5. For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement; and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

                    THE GOVERNMENT'S OBLIGATIONS

6. The government agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, move to dismiss the remaining counts of the Indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

1    d.   At the time of sentencing, provided that defendant
2  demonstrates an acceptance of responsibility for the offenses up to
3  and including the time of sentencing, recommend a two-level
4  reduction in the applicable Sentencing Guidelines offense level,
5  pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move
6  for an additional one-level reduction if available under that
7  section.

8    e.   Recommend that defendant be sentenced to a term of
9  imprisonment no higher than the low end of the applicable Sentencing
10  Guidelines range. For purposes of this agreement, the low end of the
11  Sentencing Guidelines range is that defined by the Sentencing Table
12  in U.S.S.G. Chapter 5, Part A.

13    7.   The government further agrees:

14    a.   Not to offer as evidence in its case-in-chief in the
15  above-captioned case or any other criminal prosecution that may be
16  brought against defendant by the government, or in connection with
17  any sentencing proceeding in any criminal case that may be brought
18  against defendant by the government, any Cooperation Information.
19  Defendant agrees, however, that the government may use both
20  Cooperation Information and Plea Information: (1) to obtain and
21  pursue leads to other evidence, which evidence may be used for any
22  purpose, including any criminal prosecution of defendant; (2) to
23  cross-examine defendant should defendant testify, or to rebut any
24  evidence offered, or argument or representation made, by defendant,
25  defendant's counsel, or a witness called by defendant in any trial,
26  sentencing hearing, or other court proceeding; and (3) in any
27  criminal prosecution of defendant for false statement, obstruction
28  of justice, or perjury.

b.    Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed. Defendant understands, however, that Cooperation Information will be disclosed to the probation office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.    In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.    If the government determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 through 4 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a sentence within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

8.    Defendant understands the following:

a.    Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

6

b.   Nothing in this agreement requires the government or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.   Defendant cannot withdraw defendant's guilty pleas if the government does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the government makes such a motion and the Court does not grant it or if the Court grants such a government motion but elects to sentence above the range requested by the government.

d.   At this time the government makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance. The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the government.

e.   The government's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

## NATURE OF THE OFFENSE

9.   Defendant understands that for defendant to be guilty of the crime charged in Count One of the Indictment, that is, conspiracy to commit wire fraud, false statements relating to loan applications, and identity theft in violation of 18 U.S.C. § 371, the following must be true: (1) beginning in or around January 2005, or earlier, and ending no earlier than in or around August 2014,

7

1  there was an agreement between two or more persons to commit the
2  crimes of wire fraud, false statements relating to loan
3  applications, and identity theft; (2) the defendant became a member
4  of the conspiracy knowing of at least one of its objects and
5  intending to help accomplish it; and (3) one of the members of the
6  conspiracy performed at least one overt act for the purpose of
7  carrying out the conspiracy.

8      Defendant further understands that the elements of wire fraud
9  in violation of 18 U.S.C. § 1343 are: (1) the defendant knowingly
10  participated in a scheme or plan to defraud, or a scheme or plan for
11  obtaining money or property by means of false or fraudulent
12  pretenses, representations, or promises; (2) the statements made or
13  facts omitted as part of the scheme were material; that is, they had
14  a natural tendency to influence, or were capable of influencing, a
15  person to part with money or property; (3) the defendant acted with
16  the intent to defraud, that is, the intent to deceive or cheat; and
17  (4) the defendant used, or caused to be used, a wire communication
18  to carry out or attempt to carry out an essential part of the
19  scheme.

20      Defendant further understands that the elements of false
21  statements relating to loan applications in violation of 18 U.S.C.
22  § 1014 are: (1) the defendant made a false statement or report to a
23  federally-insured bank or a mortgage lending business; (2) the
24  defendant made the false statement or report to the federally-
25  insured bank or mortgage lending business knowing it was false; and
26  (3) the defendant did so for the purpose of influencing in any way
27  the action of the federally-insured bank or mortgage lending
28  business.

Defendant further understands that the elements of identity theft in violation of 18 U.S.C. § 1028(a)(3) are: (1) the defendant knowingly possessed five or more identification documents, authentication features, or false identification documents; (2) the defendant intended to use unlawfully and transfer unlawfully those identification documents, authentication features, and false identification documents; and (3) the identification documents, authentication features, and false identification documents were or appeared to be issued by or under the authority of the United States.

10. Defendant understands that for defendant to be guilty of the crime charged in Count Nine of the Indictment, that is, false statements relating to loan applications in violation of 18 U.S.C. §§ 1014 and 2, the following must be true: (1) the defendant made a false statement or report to a federally-insured bank or a mortgage lending business, namely, American Home Mortgage Servicing, Inc. ("AHMSI"); (2) the defendant made the false statement or report to the federally-insured bank or mortgage lending business knowing it was false; and (3) the defendant did so for the purpose of influencing in any way the action of the federally-insured bank or mortgage lending business.

11. Defendant understands that for defendant to be guilty of the crime charged in the one-count Information, that is, subscribing to a false tax return, in violation of 26 U.S.C. § 7206(1), the following must be true: (1) defendant signed and filed a tax return for the year 2010 that she knew contained false information as to a material matter; (2) the return contained a written declaration that it was being signed subject to the penalties of perjury; and (3) in

1  filing the false tax return, defendant acted willfully and
2  intentionally, that is, defendant knew that federal tax law imposed
3  a duty on her, and defendant intentionally and voluntarily violated
4  that duty.

5                    PENALTIES AND RESTITUTION

6       12.  Defendant understands that the statutory maximum sentence
7  that the Court can impose for a violation of 18 U.S.C. § 371, as
8  charged in Count One of the Indictment, is: 5 years' imprisonment; a
9  3-year period of supervised release; a fine of $250,000 or twice the
10  gross gain or gross loss resulting from the offense, whichever is
11  greatest; and a mandatory special assessment of $100.

12      13.  Defendant understands that the statutory maximum sentence
13  that the Court can impose for a violation of 18 U.S.C. § 1014, as
14  charged in Count Nine of the Indictment, is: 30 years' imprisonment;
15  a 5-year period of supervised release; a fine of $1,000,000 or twice
16  the gross gain or gross loss resulting from the offense, whichever
17  is greatest; and a mandatory special assessment of $100.

18      14.  Defendant understands that the statutory maximum sentence
19  that the Court can impose for a violation of 26 U.S.C. § 7206(1), as
20  charged in the one-count Information, is: 3 years' imprisonment; a
21  1-year period of supervised release; a fine of $250,000 or twice the
22  gross gain or gross loss resulting from the offense, whichever is
23  greatest; payment of the costs of prosecution; and a mandatory
24  special assessment of $100.

25      15.  Defendant understands therefore, that for Counts One and
26  Nine of the Indictment and the single count of the Information, the
27  statutory maximum sentence that the court can impose is: 38 years'
28  imprisonment; a 5-year period of supervised release; a fine of

$1,350,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; the payment of the costs of prosecution of the one-count Information; and a mandatory special assessment of $300.

16.   Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction in the one-count Information and any relevant conduct; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above. The defendant agrees to pay full restitution to the IRS based on the count of conviction in the one-count Information and any relevant conduct. Any restitution paid to the IRS shall be credited by the IRS against any amount which the defendant owes the IRS, in accordance with standard IRS procedure. If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

17.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses in Counts One

11

and Nine of the Indictment to which defendant is pleading guilty.
Defendant agrees that the Court may order restitution to persons
other than the victims of these offenses in amounts greater than
those alleged in the two counts of the Indictment, to which
defendant is pleading guilty. In particular, defendant agrees that
the Court may order restitution to any victim of any of the
following for any losses suffered by that victim as a result of: (a)
any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection
with the offenses in counts One and Nine of the Indictment to which
defendant is pleading guilty; and (b) any counts of the Indictment
dismissed pursuant to this agreement as well as all relevant
conduct, as defined in U.S.S.G. § 1B1.3, in connection with those
counts.

18.   Defendant understands that supervised release is a period
of time following imprisonment during which defendant will be
subject to various restrictions and requirements. Defendant
understands that if defendant violates one or more of the conditions
of any supervised release imposed, defendant may be returned to
prison for all or part of the term of supervised release authorized
by statute for the offenses that resulted in the term of supervised
release, which could result in defendant serving a total term of
imprisonment greater than the statutory maximum stated above.

19.   Defendant understands that, by pleading guilty, defendant
may be giving up valuable government benefits and valuable civic
rights, such as the right to vote, the right to possess a firearm,
the right to hold office, and the right to serve on a jury.
Defendant understands that once the Court accepts defendant's guilty
plea, it will be a federal felony for defendant to possess a firearm

12

1  or ammunition. Defendant understands that the conviction in this
2  case may also subject defendant to various other collateral
3  consequences, including but not limited to revocation of probation,
4  parole, or supervised release in another case and suspension or
5  revocation of a professional license. Defendant understands that
6  unanticipated collateral consequences will not serve as grounds to
7  withdraw defendant's guilty plea.

8       20.  Defendant understands that, if defendant is not a United
9  States citizen, the felony conviction in this case may subject
10 defendant to: removal, also known as deportation, which may, under
11 some circumstances, be mandatory; denial of citizenship; and denial
12 of admission to the United States in the future. The Court cannot,
13 and defendant's attorney also may not be able to, advise defendant
14 fully regarding the immigration consequences of the felony
15 conviction in this case. Defendant understands that unexpected
16 immigration consequences will not serve as grounds to withdraw
17 defendant's guilty plea.

18                            FACTUAL BASIS

19      21.  Defendant admits that defendant is, in fact, guilty of the
20 offenses to which defendant is agreeing to plead guilty. Defendant
21 and the government agree to the statement of facts provided below in
22 paragraphs 22-29, and agree that this statement of facts is
23 sufficient to support a plea of guilty to the charges described in
24 this agreement and to establish the Sentencing Guidelines factors
25 set forth in paragraph 31 below but is not meant to be a complete
26 recitation of all facts relevant to the underlying criminal conduct
27 or all facts known to either party that relate to that conduct.

28

                                   13

22.   In or around September 2007, defendant JANE MATSUBA-GARCIA began working for and with co-conspirators D.M., Y.P., T.M., Jm.M., R.G., J.H., and others. D.M. was the beneficial owner and primary officer of Owner Management Service, LLC, d/b/a Trust Holding Service Co., OMS Global, LLC, and affiliated companies (collectively, "the Companies"), located in Los Angeles County, within the Central District of California. The Companies purported to assist property owners ("distressed borrowers") in short sales where the property owners could no longer afford mortgage payments on the properties they owned ("distressed properties"). At the direction of the conspirators, distressed borrowers transferred distressed properties' titles to trusts established and controlled by the conspirators, based on representations by D.M. and other co-conspirators that they would perform short sales on behalf of the distressed borrowers. Defendant MATSUBA-GARCIA worked as the manager of the short sale department at the Companies under the direction of co-conspirator D.M.

23.   Instead of performing short sales as represented, the conspirators rented the distressed properties to third parties, collecting rent and not paying most mortgages on the distressed properties. The conspirators then engaged in various tactics designed by D.M. and other co-conspirators to delay foreclosure by lenders on distressed properties so the conspirators could continue collection of rent from these properties. These tactics included, but were not limited to:

     (a)   fabricating short sale offers for distressed properties using stolen and fictitious identities and submitting

14

those offers to lenders, including financial institutions
insured by the FDIC;

(b)    falsifying financial and tax statements for distressed
borrowers, including by forging the signatures of
distressed borrowers, and submitting them to lenders,
including financial institutions insured by the FDIC;

(c)    filing bankruptcy petitions in the names of distressed
borrowers without their knowledge, including by forging
the signatures of distressed borrowers on the petitions;
and

(d)    fabricating liens on the distressed properties. At the
direction of D.M., defendant would assist with these
tactics to delay foreclosure on properties controlled by
the conspirators.

24.    Substantially all of the false documents created by
defendant and her co-conspirators and submitted to federally-insured
banks and mortgage lending businesses or mortgage servicers, were
transmitted by wire, and specifically, by fax, through interstate
commerce. The fraudulent actions of the conspirators exposed
financial institutions to new and increased risk of loss.

25.    For the purpose of carrying out the conspiracy, the
defendant and her co-conspirators committed numerous overt acts,
including the following:

a.    On or about April 2, 2007, co-conspirators
transferred and caused to be transferred property at 10415 Monogram
Avenue, Granada Hills, California ("the Monogram Avenue property"),
to a trust controlled by the conspirators. *See* Overt Act No. 1 in
the Indictment.

b.    On or about June 25, 2007, co-conspirators submitted and caused to be submitted, to Washington Mutual, N.A., a false application for a mortgage loan, financing the purchase of the Monogram Avenue property in the name of stolen identity S.Y.Y. *See* Overt Act No. 2 in the Indictment.

c.    On or about June 26, 2009, defendant and her co-conspirators submitted and caused to be submitted a fraudulent short sale purchase offer for the property at 20101 Halsted Street, Chatsworth, California ("the Halsted Street property"), and related documents to AHMSI in the name of stolen identity A.G., accompanied by fraudulent financial hardship documents and other misrepresentations. *See* Overt Act No. 3 in the Indictment.

d.    On or about December 11, 2009, co-conspirator D.M. wrote a check in the amount of $11,075.00 from a Wells Fargo bank account for Bill Pay Service, an OMS company, account number xxxxxx2050, to OMS employee C.L. *See* Overt Act No. 4 in the Indictment.

e.    On or about December 12, 2009, co-conspirators D.M. and T.M. caused OMS employee C.L. to purchase a cashier's check payable to T.M. in the amount of $11,075.00. *See* Overt Act No. 5 in the Indictment.

f.    On or about December 17, 2009, co-conspirator T.M. deposited the cashier's check in the amount of $11,075.00 into a Wells Fargo bank account in the name of co-conspirators D.M., J.M., and T.M., account number xxxxxx8059. *See* Overt Act No. 6 in the Indictment.

g.    On or about March 25, 2010, co-conspirator D.M. caused the submission of a fraudulent loan modification request and

related documents for the Halsted Street property to AHMSI,
including a falsified "Andex, Inc." pay stub and containing false
statements regarding her unemployment and financial hardship. *See*
Overt Act No. 7 in the Indictment.

h.   On or about August 24, 2010, defendant and co-
conspirator D.M. submitted, and caused to be submitted, a fraudulent
short sale purchase offer and related documents for the Halsted
Street property to AHMSI in the name of fabricated identity J.A. *See*
Overt Act No. 8 in the Indictment.

i.   On or about June 22, 2011, defendant and co-
conspirator D.M. caused a false short sale purchase offer and
related documents for the property at 13243 Bryson Street, Arleta,
California ("the Bryson Street property") to be submitted in the
name of stolen identity S.M.L. to Wells Fargo dba America's
Servicing Company to delay foreclosure on the Bryson Street
property. *See* Overt Act No. 9 in the Indictment.

j.   On or about September 8, 2011, defendant and co-
conspirator D.M. caused a false short sale purchase offer Addendum
on behalf of distressed homeowner J.V. and stolen identity S.M.L. to
be submitted to Wells Fargo dba America's Servicing Company,
featuring forged signatures of J.V. and S.M.L., to delay foreclosure
on the Bryson Street property. *See* Overt Act No. 10 in the
Indictment.

26.   As a result of the foregoing fraudulent actions by the
conspirators, the Companies obtained at least approximately
$17,810,194 in rental income from approximately September 2007
through October 2011.

27.   In addition, in or around July 27, 2011, at the direction of D.M. and other co-conspirators, defendant knowingly and fraudulently made false statements under penalty of perjury in a deposition as part of the civil proceeding in *Hee Eun Yoo v. U.S. Bank National Association, et al.*, Case No. BC443288 (Cal. Sup.), including testifying falsely about the roles of co-conspirators D.M., Y.P., T.M., and Jm.M.; the ownership of Creative Group Resource and Trust Holding Service; and the operations of Creative Group Resource and Trust Holding Service.

28.   In addition, as described in Count Nine in the Indictment, in or around June 26, 2009, defendant, together with others, aiding and abetting each other, knowingly submitted and willfully caused to be submitted from within the Central District of California a false short sale purchase offer for the Halsted Street property and related documents, including false statements regarding unemployment and financial hardship, to AHMSI in the name of stolen identity A.G, for the purpose of influencing the actions of AHMSI, a mortgage lending business that was a financial institution as defined in Title 18, United States Code, Section 20(10). The defendant submitted and caused to be submitted the false statements and materials to AHMSI knowing they were false, and did so for the purpose of influencing the action of AHMSI in connection with a residential loan application, and any change, extension, or deferment thereto.

29.   In addition, on or about March 16, 2012, defendant willfully made and subscribed to a U.S. Individual Income Tax Return, Form 1040, for the tax year 2010, which defendant verified by a written declaration that said the tax return was made under the

1   penalty of perjury, and was true, correct, and complete, and which
2   was filed with the IRS. However, as defendant then well knew, said
3   Form 1040 was not true and correct as to every material matter.
4   Specifically, defendant listed or caused to be listed a false amount
5   for adjusted gross income. Defendant reported gross income of $0,
6   when, in fact, as she then well knew, she had earned income in the
7   2010 tax year. Defendant falsely subscribed to the return willfully,
8   with the specific intent to violate the duty she knew was imposed on
9   her by the tax laws to file truthful returns. As a result, there was
10  a tax loss to the IRS for the 2010 tax year. Defendant further
11  agrees that as a result of listing false amounts for adjusted gross
12  income in a return for tax year 2011, the IRS incurred a tax loss
13  for the 2011 tax year.

### SENTENCING FACTORS

15       30.   Defendant understands that in determining defendant's
16  sentence the Court is required to calculate the applicable
17  Sentencing Guidelines range and to consider that range, possible
18  departures under the Sentencing Guidelines, and the other sentencing
19  factors set forth in 18 U.S.C. § 3553(a). Defendant understands that
20  the Sentencing Guidelines are advisory only, that defendant cannot
21  have any expectation of receiving a sentence within the calculated
22  Sentencing Guidelines range, and that after considering the
23  Sentencing Guidelines and the other § 3553(a) factors, the Court
24  will be free to exercise its discretion to impose any sentence it
25  finds appropriate up to the maximum set by statute for the crimes of
26  conviction.

27       31.   Defendant and the government agree to the following
28  applicable Sentencing Guidelines factors:

<u>Base Offense Level</u>:            +7 [U.S.S.G. § 2B1.1(a)(2)]

Specific Offense
Characteristics
Gain between $9.5m and $25m: +20 [U.S.S.G. § 2B1.1(b)(1)(K)]

Resulted in substantial
financial hardship
to 25 or more victims:       +6  [U.S.S.G. § 2B1.1(b)(2)(C)]

Sophisticated Means:         +2  [U.S.S.G. § 2B1.1(b)(10)]

Aggravating Role:            +2  [U.S.S.G. § 3B1.1(c)]

The government will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 6(d) are met. Subject to paragraphs 7 above and 44 below, defendant and the government agree not to seek or argue, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the government were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the government, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the government would be free to seek the enhancement set forth in that section.

32.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

33.   Defendant and the government reserve the right to argue for a sentence outside the sentencing range established by the

20

1 | Sentencing Guidelines based on the factors set forth in 18 U.S.C.
2 | § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

3 | <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

4 | 34. Defendant understands that by pleading guilty, defendant
5 | gives up the following rights:

6 | a. The right to persist in a plea of not guilty.

7 | b. The right to a speedy and public trial by jury.

8 | c. The right to be represented by counsel – and if
9 | necessary have the court appoint counsel - at trial. Defendant
10 | understands, however, that, defendant retains the right to be
11 | represented by counsel – and if necessary have the court appoint
12 | counsel - at every other stage of the proceeding.

13 | d. The right to be presumed innocent and to have the
14 | burden of proof placed on the government to prove defendant guilty
15 | beyond a reasonable doubt.

16 | e. The right to confront and cross-examine witnesses
17 | against defendant.

18 | f. The right to testify and to present evidence in
19 | opposition to the charges, including the right to compel the
20 | attendance of witnesses to testify.

21 | g. The right not to be compelled to testify, and, if
22 | defendant chose not to testify or present evidence, not to have that
23 | choice be used against defendant.

24 | h. Any and all rights to pursue any affirmative
25 | defenses, Fourth Amendment or Fifth Amendment claims, and other
26 | pretrial motions that have been filed or could be filed.

27

28

21

## WAIVER OF APPEAL OF CONVICTION

35.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

36.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 188 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the restitution ordered by the Court related to defendant's guilty plea to the one-count Information, provided the restitution ordered does not exceed $49,608.14; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of supervised release imposed by the Court: the conditions set forth in General Orders 318, 01-05, and/or 05-02 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

37.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly

retroactive change in the applicable Sentencing Guidelines,
sentencing statutes, or statutes of conviction.

38. The government agrees that, provided (a) all portions of
the sentence are at or below the statutory maximum specified above
and (b) the Court imposes a term of imprisonment of no less than 151
months, the government gives up its right to appeal any portion of
the sentence, with the exception that the government reserves the
right to appeal the amount of restitution ordered.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

39. Defendant agrees that if, after entering guilty pleas
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty pleas on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the government will be relieved of all of its
obligations under this agreement, including in particular its
obligations regarding the use of Cooperation Information; (b) in any
investigation, criminal prosecution, or civil, administrative, or
regulatory action, defendant agrees that any Cooperation Information
and any evidence derived from any Cooperation Information shall be
admissible against defendant, and defendant will not assert, and
hereby waives and gives up, any claim under the United States
Constitution, any statute, or any federal rule, that any Cooperation
Information or any evidence derived from any Cooperation Information
should be suppressed or is inadmissible; and (c) should the
government choose to pursue any charge or any civil, administrative,
or regulatory action that was either dismissed or not filed as a
result of this agreement, then (i) any applicable statute of
limitations will be tolled between the date of defendant's signing

23

of this agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing
this agreement.

EFFECTIVE DATE OF AGREEMENT

40.  This agreement is effective upon signature and execution
of all required certifications by defendant, defendant's counsel,
and an attorney for the government.

BREACH OF AGREEMENT

41.  Defendant agrees that if defendant, at any time after the
effective date of this agreement, knowingly violates or fails to
perform any of defendant's obligations under this agreement ("a
breach"), the government may declare this agreement breached. For
example, if defendant knowingly, in an interview, before a grand
jury, or at trial, falsely accuses another person of criminal
conduct or falsely minimizes defendant's own role, or the role of
another, in criminal conduct, defendant will have breached this
agreement. All of defendant's obligations are material, a single
breach of this agreement is sufficient for the government to declare
a breach, and defendant shall not be deemed to have cured a breach
without the express agreement of the government in writing. If the
government declares this agreement breached, and the Court finds
such a breach to have occurred, then:

a.   If defendant has previously entered guilty pleas
pursuant to this agreement, defendant will not be able to withdraw
the guilty pleas.

24

1            b.    The government will be relieved of all its
2  obligations under this agreement; in particular, the government:
3  (i) will no longer be bound by any agreements concerning sentencing
4  and will be free to seek any sentence up to the statutory maximum
5  for the crimes to which defendant has pleaded guilty; and (ii) will
6  no longer be bound by any agreement regarding the use of Cooperation
7  Information and will be free to use any Cooperation Information in
8  any way in any investigation, criminal prosecution, or civil,
9  administrative, or regulatory action.

10            c.    The government will be free to criminally prosecute
11  defendant for false statement, obstruction of justice, and perjury
12  based on any knowingly false or misleading statement by defendant.

13            d.    In any investigation, criminal prosecution, or civil,
14  administrative, or regulatory action: (i) defendant will not assert,
15  and hereby waives and gives up, any claim that any Cooperation
16  Information was obtained in violation of the Fifth Amendment
17  privilege against compelled self-incrimination; and (ii) defendant
18  agrees that any Cooperation Information and any Plea Information, as
19  well as any evidence derived from any Cooperation Information or any
20  Plea Information, shall be admissible against defendant, and
21  defendant will not assert, and hereby waives and gives up, any claim
22  under the United States Constitution, any statute, Rule 410 of the
23  Federal Rules of Evidence, Rule 11(f) of the Federal Rules of
24  Criminal Procedure, or any other federal rule, that any Cooperation
25  Information, any Plea Information, or any evidence derived from any
26  Cooperation Information or any Plea Information should be suppressed
27  or is inadmissible.

28

42.   Following the Court's finding of a knowing breach of this agreement by defendant, should the government choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

COURT AND PROBATION OFFICE NOT PARTIES

43.   Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the government's sentencing recommendations or the parties' agreements to facts or sentencing factors.

44.   Defendant understands that both defendant and the government are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court; (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence; and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 31 are consistent with the facts of this case. While this paragraph permits both the government and defendant to submit full and complete

1  factual information to the United States Probation Office and the
2  Court, even if that factual information may be viewed as
3  inconsistent with the facts agreed to in this agreement, this
4  paragraph does not affect defendant's and the government's
5  obligations not to contest the facts agreed to in this agreement.
6      45.   Defendant understands that even if the Court ignores any
7  sentencing recommendation, finds facts or reaches conclusions
8  different from those agreed to, and/or imposes any sentence up to
9  the maximum established by statute, defendant cannot, for that
10 reason, withdraw defendant's guilty pleas, and defendant will remain
11 bound to fulfill all defendant's obligations under this agreement.
12 Defendant understands that no one -- not the prosecutor, defendant's
13 attorney, or the Court -- can make a binding prediction or promise
14 regarding the sentence defendant will receive, except that it will
15 be within the statutory maximum.
16                     NO ADDITIONAL AGREEMENTS
17     46.   Defendant understands that, except as set forth herein,
18 there are no promises, understandings, or agreements between the
19 government and defendant or defendant's attorney, and that no
20 additional promise, understanding, or agreement may be entered into
21 unless in a writing signed by all parties or on the record in court.
22           PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING
23     47.   The parties agree that this agreement will be considered
24 part of the record of defendant's guilty plea hearing as if the
25 entire agreement had been read into the record of the proceeding.
26 //
27 //
28 //

27

AGREED AND ACCEPTED

ANDREW WEISSMANN
Chief
U.S. Department of Justice
Criminal Division, Fraud Section

BENJAMIN SINGER
Deputy Chief
U.S. Department of Justice
Criminal Division, Fraud Section

_____          2/22/17
NIALL M. O'DONNELL                        Date
DAVID A. BYBEE
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section

_____          _____
JANE MATSUBA-GARCIA                       Date
Defendant

_____          _____
MARK J. WERKSMAN                          Date
Attorney for Defendant
JANE MATSUBA-GARCIA

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises,

28

1  Criminal Division, Fraud Section

2  BENJAMIN SINGER
   Deputy Chief
3  U.S. Department of Justice
   Criminal Division, Fraud Section

4

5  _____        _____
   NIALL M. O'DONNELL                      Date
6  DAVID A. BYBEE
   Trial Attorneys
7  U.S. Department of Justice
   Criminal Division, Fraud Section

8

9  _____        ___2/16/17_____
   JANE MATSUBA-GARCIA                     Date
10 Defendant

11 _____        ___2/21/17_____
   MARK J. WERKSMAN                        Date
12 Attorney for Defendant
13 JANE MATSUBA-GARCIA

14

15              CERTIFICATION OF DEFENDANT

16      I have read this agreement in its entirety. I have had enough

17 time to review and consider this agreement, and I have carefully and

18 thoroughly discussed every part of it with my attorney. I understand

19 the terms of this agreement, and I voluntarily agree to those terms.

20 I have discussed the evidence with my attorney, and my attorney has

21 advised me of my rights, of possible pretrial motions that might be

22 filed, of possible defenses that might be asserted either prior to

23 or at trial, of the sentencing factors set forth in 18 U.S.C.

24 § 3553(a), of relevant Sentencing Guidelines provisions, and of the

25 consequences of entering into this agreement. No promises,

26 inducements, or representations of any kind have been made to me

27 other than those contained in this agreement. No one has threatened

28 or forced me in any way to enter into this agreement. I am satisfied

                              29

1   with the representation of my attorney in this matter, and I am

2   pleading guilty because I am guilty of the charges and wish to take

3   advantage of the promises set forth in this agreement, and not for

4   any other reason.

5

6   JANE MATSUBA-GARCIA                          Date  2/16/17
    Defendant

7

8                    CERTIFICATION OF DEFENDANT'S ATTORNEY

9        I am JANE MATSUBA-GARCIA's attorney. I have carefully and

10  thoroughly discussed every part of this agreement with my client.

11  Further, I have fully advised my client of her rights, of possible

12  pretrial motions that might be filed, of possible defenses that

13  might be asserted either prior to or at trial, of the sentencing

14  factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing

15  Guidelines provisions, and of the consequences of entering into this

16  agreement. To my knowledge:  no promises, inducements, or

17  representations of any kind have been made to my client other than

18  those contained in this agreement; no one has threatened or forced

19  my client in any way to enter into this agreement; my client's

20  decision to enter into this agreement is an informed and voluntary

21  one; and the factual basis set forth in this agreement is sufficient

22  to support my client's entry of guilty pleas pursuant to this

23  agreement.

24

25  MARK J. WERKSMAN                             Date  2/2/17
    Attorney for JANE MATSUBA-GARCIA

26

27

28

                                  30