GLENN S. LEON
Chief, Fraud Section
Criminal Division, U.S. Department of Justice
NIALL M. O'DONNELL
Assistant Chief, Fraud Section
Criminal Division, U.S. Department of Justice
    300 N. Los Angeles St., Suite 2001
    Los Angeles, CA 90012
    Telephone: (202) 257-3295
    E-mail: niall.odonnell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMIE MATSUBA,<br>    aka "Jamie Michaels,"<br>    aka "Jamie Yukari,"<br><br>    Defendant. | No. CR 16-538-RGK<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR ORDER RE: REDUCTION IN SENTENCE—FEDERAL GUIDELINES § 4C1.1; 18 U.S.C. § 3582(c)(2); MEMORANDUM OF POINTS AND AUTHORITIES |

    The United States of America hereby responds to defendant Jamie Matsuba's motion under 18 U.S.C. § 3582(c)(2) to reduce her sentence based on a 2-level reduction to her sentencing Guidelines under U.S.S.G. § 4C1.1, which applies for certain defendants with zero criminal history points, and which was enacted by Part B, Subpart 1 of Amendment 821 to the Sentencing Guidelines (the "Motion") [Dkt. 528]. The Motion should be denied because defendant Matsuba personally caused substantial financial hardship to victims, and is therefore ineligible for a sentence reduction under U.S.S.G. § 4C1.1.

    This opposition is based on the attached memorandum of points and authorities, and the records and files in this case.

| | | |
|---|---|---|
| 1 | Dated: January 8, 2024 | Respectfully submitted, |
| 2 | | GLENN S. LEON |
| 3 | | Chief |
| 4 | | /s/ Niall M. O'Donnell |
| 5 | | NIALL M. O'DONNELL<br>Fraud Section, Criminal Division, |
| 6 | | U.S. Department of Justice |
| 7 | | Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PROCEDURAL BACKGROUND

On December 13, 2017, after a six-day trial, the jury convicted Jamie Matsuba of both charges against her, namely, one count of Conspiracy to Commit Wire Fraud, False Statements Relating to Loan Applications, and Identity Theft, in violation of 18 U.S.C. § 371 (Count One), and one count of False Statements Relating to Loan Applications, in violation of 18 U.S.C. §§ 1014 and 2 (Count Nine).

On July 16, 2018, the Court sentenced Matsuba to 135 months. [Dkt. 273.] At sentencing, the Court found that Matsuba's Guidelines calculation resulted in a total offense level of 33, which included a 6-level enhancement for causing substantial financial hardship to 25 or more victims—as noted in Paragraph 40 of the Presentence Investigation Report ("PSR")—under U.S.S.G. § 2B1.1(b)(2)(C). [PSR, Dkt. 228.]

On appeal, the Ninth Circuit affirmed Matsuba's convictions and reversed the sentencing in part, issuing a limited remand for consideration of two issues: (1) for the Court to make an express finding as to the "loss" versus "gain" from the scheme; and (2) reconsideration of restitution, by offsetting the amounts the conspirators paid towards maintenance and homeowners' fees. [Dkt. 420.]

On September 22, 2020, the Court readopted the enhancements in the PSR, found that the intended loss was greater than $3.5 million, and resentenced Matsuba to 135 months. [Dkt. 466 (Transcript of Matsuba's 09.22.2020 Resentencing Hearing) at 8:25–9:3, 14:25–15:8.]

On September 9, 2021, the Ninth Circuit again affirmed in part, and vacated and remanded in part solely so that the Court could ensure that all restitution offsets were included and that the proper victims named. [Dkt. 495.] On December 14, 2022, the Court corrected the restitution applicable to Matsuba to $10,608,105 and entered a revised victim list under seal. [Dkt. 525.]

## II. ARGUMENT

Matsuba is ineligible for the 2-level sentence reduction under U.S.S.G. § 4C1.1 for zero-point offenders because she personally caused substantial financial hardship as part of her crimes.

### A. Legal Standard

A motion to reduce an otherwise final sentence under 18 U.S.C. § 3582(c)(2) is a limited and narrow exception to the rule that final sentences are not to be modified. *United States v. Aguilar-Canche*, 835 F.3d 1012, 1017 (9th Cir. 2016). Under 18 U.S.C. § 3582(c)(2), a district court may reduce the sentence of "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Thus, under 18 U.S.C. § 3582(c)(2), a district court must undertake a two-step process. *Dillon v. United States*, 560 U.S. 817, 826–27 (2010). First, the court must apply U.S.S.G. § 1B1.10(a) to determine if the defendant is eligible for relief under 18 U.S.C. § 3582(c)(2), namely, by determining the defendant's Guideline range "had the relevant amendment been in effect at the time of the initial sentencing." *Dillon*, 560 U.S. at 826–27. The statute authorizes relief only if a retroactive amendment to the sentencing guidelines lowers the defendant's applicable sentencing guidelines range and relief is consistent with applicable policy statements. *Id.* At the second step, if a defendant is eligible, a court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 560 U.S. at 827.

In Amendment 821 to the Sentencing Guidelines, the Sentencing Commission added U.S.S.G. § 4C1.1, which provides for a 2-offense-level reduction for certain defendants with zero criminal history points ("zero-point offenders"). However, § 4C1.1 includes numerous eligibility criteria that excludes many zero-point offenders. The provision states:

2

    (a)    <u>Adjustment</u>. – If the defendant meets all of the following criteria:

        (1)    The defendant did not receive any criminal history points from Chapter Four, Part A;

        (2)    The defendant did not receive an adjustment under §3A1.4 (Terrorism);

        (3)    The defendant did not use violence or credible threats of violence in connection with the offense;

        (4)    The offense did not result in death or serious bodily injury;

        (5)    The instant offense of conviction is not a sex offense;

        (6)    The defendant did not personally cause substantial financial hardship;

        (7)    The defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induct another participant to do so) in connection with the offense;

        (8)    The instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);

        (9)    The defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and

        (10)    The defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

decrease the offense level determined under Chapters Two and Three by 2 levels.

Section 4C1.1 states that when a sentencing court determines whether a defendant's conduct resulted in "substantial financial hardship to a victim," the Court "shall" consider the factors identified in the Commentary to U.S.S.G. § 2B1.1. U.S.S.G. § 4C1.1(b)(3). That Commentary to § 2B1.1 provides:

    (F)    Substantial Financial Hardship.—In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim—

        (i)    becoming insolvent;

        (ii)    filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);

3

(iii) suffering substantial loss of a retirement, education, or other savings or investment fund;

(iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;

(v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and

(vi) suffering substantial harm to his or her ability to obtain credit.

The Commentary to § 4C1.1 also states that "[t]he application of subsection (a)(6) is to be determined *independently* of the application of subsection (b)(2) of §2B1.1 (Theft, Property Destruction, and Fraud)." U.S.S.G. § 4C1.1 cmt. app. n.1.[1]

## B. Matsuba Is Ineligible for the Zero-Point Offender Reduction.

Because § 4C1.1(a)(6) specifically excludes defendants who "personally cause[d] substantial financial hardship," Matsuba is ineligible for the 2-level reduction. Here, as shown at trial and detailed in the PSR, Matsuba conspired with others to run a multi-million-dollar mortgage foreclosure rescue fraud scheme that took advantage of distressed mortgage borrowers, financial institutions, and identity theft victims in order to enrich her and her coconspirators. (PSR ¶¶ 10–27.) Matsuba worked in each part of the business and helped direct every facet of the scheme, the main element of which was a foreclosure rescue fraud scheme where she and her coconspirators misrepresented to homeowners whose properties were facing foreclosure ("distressed homeowners") that the conspirators' businesses[2] would help the homeowners avoid foreclosure by

---

[1] The Sentencing Commission has also determined that any order reducing a defendant's sentence cannot have an effective date prior to February 1, 2024, even though the amendment went into effect on November 1, 2023. *See* U.S.S.G. § 1B1.10(e)(2) (effective Nov. 1, 2023). "A reduction based on the retroactive application of Part A or Part B, Subpart 1 of Amendment 821 that does not comply with the requirement that the order take effect no earlier than February 1, 2024, is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2)." U.S.S.G. § 1B1.10, cmt. n.7 (effective Nov. 1, 2023).

[2] Matsuba and her coconspirators controlled and operated a network of businesses involved in the scheme, including: Owner Management Service, LLC; Trust Holding Service Co.; Creative Group Resource, LLC, and Boston Holding Co. Matsuba also used the following companies for which she was an officer: Westside Servicing Co.; Ramsfire Global, LLC, d/b/a OMS, LLC, and Ramsfire Equity Partners.

4

coordinating a "short sale" for their properties. (*Id.*)[3] Based on these misrepresentations, the distressed homeowners transferred title to their properties to trusts controlled by Matsuba and her coconspirators, purportedly to allow them to coordinate communications with lenders and perform the short sales. (*Id.*) However, Matsuba and her coconspirators then simply leased these properties to third parties, collected the rent for themselves, and did not make mortgage payments on the properties. (*Id.*)

Matsuba and her coconspirators then used various deceptive tactics to delay foreclosure on the distressed properties, so that they could continue to collect rent. (*Id.*) These tactics included: (1) fabricating short sale purchase offers for the distressed properties using stolen or fake identities; (2) falsifying financial and tax statements in the names of the distressed borrowers, including by forging their signatures, and submitting them to lenders, including FDIC-insured financial institutions; (3) filing bankruptcy petitions in the names of distressed homeowners, including by forging their signatures, and/or stolen or fake identities; and (4) fabricating and filing fake liens on the distressed properties. (*Id.*)

As part of the scheme, the coconspirators also used stolen and fake identities. Specifically, the coconspirators obtained stolen identification documents, including California driver's licenses and social security cards, and also created dozens of fake identification documents, adding new information or photos, and they used those stolen identities to mislead mortgage lenders, including to represent supposed short sale buyers. (*Id.*) Matsuba and her coconspirators did not just steal money that was rightly that of the distressed homeowner victims; she and her coconspirators ruined the financial health of those victims, resulting in, *inter alia*, damage to the victims' credit and bankruptcies in the victims' names. These are recognized factors for causing substantial financial harm to victims. *See* U.S.S.G. § 2B1.1 cmt. app. n.4(F) (outlining factors). Indeed, the Guidelines even identify one of the manner and means of Matsuba's scheme—the filing

---

[3] A "short sale" is where the parties negotiate the sale of a property facing foreclosure to a third party for less than the balance owed on the mortgage.

5

of involuntary bankruptcies by Matsuba and her coconspirators in the names of distressed homeowners without their knowledge—as a factor demonstrating how a defendant can cause substantial financial hardship to a victim. *Id.* n.4(F)(ii).

Moreover, the evidence at trial demonstrated Matsuba's personal involvement in causing substantial financial hardship to her victims. One such exhibit, Government's Exhibit 1111, showed Matsuba using one of her aliases—"Jamie Yukari"—to fraudulently transfer a 10 percent interest in a property held by the coconspirator Thomas Matsuba to an identity theft victim, H.K. The government also admitted Exhibit 1112, which was a bankruptcy petition the conspirators subsequently filed in H.K.'s name, stalling foreclosure and allowing Matsuba and her coconspirators to continue to collect rent on the property, even as the mortgage in the name of the original distressed homeowner remained unpaid.

Another of the distressed homeowner victims testified at trial, C.H., testified that she was told by Jamie Matsuba and her coconspirators at the Matsuba companies that they would perform a short sale to rescue her properties. C.H. repeatedly met with Matsuba, to express how C.H.'s credit was continuing to be damaged while waiting for the short sale to be completed, but that Matsuba would reassure her that the short sales would be completed. Unbeknownst to victim C.H., Matsuba and her coconspirators were simply delaying foreclosure so they could continue to collect rent from the victim's properties while the victim's credit continued to be damaged. Victim C.H. also testified to a title deed that transferred one of her properties to the Matsubas' control (admitted as Government's Exhibit 1219) and how the notary stamp by Matsuba at the bottom of the deed was fraudulent, in that Matsuba had never notarized any document for the victim. The victim also testified about involuntary petitions for bankruptcy that had been filed in the victim's name without the victim's knowledge (admitted as Government's Exhibit 1220).

The trial evidence also showed Matsuba's creation of fake hardship letters submitted to delay foreclosure on the distressed homeowner victims' properties

6

1 controlled by Matsuba and her coconspirators (Exhibit 729), as well as internal emails sent by Matsuba discussing which properties she was suspending foreclosure on (Exhibit 1018). Evidence at trial included how Matsuba knew that identity theft victims as well as fake names were being used as part of the scheme (copies of dozens of stolen identities seized in a search of the Matsuba businesses were admitted as Exhibit 1000).

In her Motion, Matsuba fails to meet her burden of demonstrating that she satisfies "all" the requirements of § 4C1.1, including that she did not personally cause substantial financial hardship. *See United States v. Agor*, No. CR 21-00136 HG-01, 2023 WL 8780649, at *5 (D. Haw. Dec. 19, 2023) ("It is the Defendant's burden to prove that the reduction for Zero-Point Offenders set forth in Section 4C1.1 applies.") (citing *United States v. Felix*, 561 F.3d 1036, 1043–44 (9th Cir. (2009) (citing rule "that the government should bear the burden of proof when it seeks to raise the offense level and that the defendant should bear the burden of proof when the defendant seeks to lower the offense level") (internal citation and quotation marks omitted)).

In contrast, the same evidence that lead the Court to apply the 6-level enhancement for causing substantial financial hardship to 25 or more victims under § 2B1.1(b)(2)(C) applies here. Moreover, even though Matsuba's actions personally caused substantial financial hardship to dozens of distressed borrower victims, § 4C1.1(a)(6) precludes a 2-level reduction if the defendant caused substantial financial hardship to *any* victim. Accordingly, § 4C1.1 is inapplicable, and the Court need not reach the second question of whether it will exercise its discretion to reduce Matsuba's sentence after it has considered the 18 U.S.C. § 3553(a) factors. *See Dillon*, 560 U.S. at 826–27.

## **CONCLUSION**

For these reasons stated above, the Court should deny Matsuba's Motion.